# Supreme Court of Florida

FRIDAY, JULY 24, 2026

James Aren Duckett,
           Appellant(s)

v.

State of Florida,
           Appellee(s)

**SC2026-1083 & SC2026-1084**
Lower Tribunal No(s).:
351987CF001347AXXXXX

---

James Aren Duckett is a prisoner under sentence of death. In February, Governor Ron DeSantis signed a warrant directing that sentence to be carried out. Due to post-warrant litigation, Duckett is now scheduled to be executed at 12:00 noon on Tuesday, July 28, 2026. At issue here is the circuit court's denial of Duckett's sixth successive postconviction motion and his second post-warrant motion for DNA testing. We affirm the circuit court's rulings.[1] We therefore deny Duckett's motion for a stay of execution.

To recap briefly, almost forty years ago, Duckett was convicted of the sexual battery and first-degree murder of eleven-year-old

---

1. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

Teresa McAbee.[2] Shortly after Duckett's warrant was signed, he

filed a motion pursuant to section 925.11, Florida Statutes, and

Florida Rule of Criminal Procedure 3.853 seeking DNA testing of a

sample taken from the victim's underwear.[3] He also filed his fifth

successive motion for postconviction relief pursuant to Florida Rule

of Criminal Procedure 3.851. The circuit court granted his DNA

request but denied his rule 3.851 motion. We stayed Duckett's

execution to allow for DNA testing to be completed. Ultimately, the

results of that testing did not exonerate Duckett. Accordingly, we

affirmed the denial of Duckett's rule 3.851 motion, denied his

petition for a writ of habeas corpus, and lifted our stay of execution.

*See Duckett v. State*, No. SC2026-0449, 2026 WL 1970442, at *1

(Fla. July 8, 2026).

Subsequently, Duckett filed another motion for DNA testing, in

---

2. The facts of Duckett's case are recounted more fully in our prior opinion. *See Duckett v. State*, No. SC2026-0449, 2026 WL 1970442, at *1-3 (Fla. July 8, 2026).

3. The sample was a swab containing a small number of sperm heads.

which he sought testing of several other items.[4]  He also filed his sixth successive motion for postconviction relief.  The circuit court summarily denied both motions.  Duckett appeals.

We begin with the circuit court's summary denial of Duckett's latest motion for postconviction DNA testing.  As an initial matter, this motion is procedurally barred.  Duckett was aware of the items he now wants tested when he filed his prior motion for DNA testing on March 5, 2026—more than four months ago.  *See Reynolds v. State*, 373 So. 3d 1124, 1126 (Fla. 2023).  He has failed to identify any valid reason he could not have requested this testing sooner.  *Id.* at 1127 n.6.

Duckett's motion for postconviction DNA testing is also meritless.  As the circuit court noted, the record clearly shows that the items Duckett now wants to test contain no identifiable or testable genetic material.[5]  Thus, the motion does not "includ[e] a

---

4.  These included cuttings from the victim's underwear and jeans, vaginal swabs and smears, fingernail scrapings, and the packaging containing some of these items.

5.  When these items were examined in 2003, no DNA was found on them because they either were degraded or did not

description of the physical evidence *containing DNA* to be tested."

§ 925.11(2)(a)1., Fla. Stat. (emphasis added); *see also* Fla. R. Crim.

P. 3.853(b)(1) (same).

We next address the summary denial of Duckett's sixth

successive postconviction motion. As alluded to above, the circuit

court previously granted Duckett's request for DNA testing on a

sample taken from the victim's underwear. Duckett acknowledged

that the testing would destroy the sample, rendering future testing

impossible. The sample was sent to a private laboratory in

Deerfield Beach, Florida, to be tested using a process known as

Single Nucleotide Polymorphism (SNP), which "allows for more

reliable DNA testing of small, deteriorated samples." *Duckett v.*

*State*, 431 So. 3d 990, 992 (Fla. 2026).[6] Specifically, the laboratory

used a ForenSeq Kintelligence Kit. As expected, the specimen was

totally consumed in the testing process.

In his sixth successive postconviction motion, Duckett argued

---

contain any DNA in the first place.

6. The Florida Department of Law Enforcement currently does
not have the capability to perform SNP testing.

that the State violated his due process rights by declining his request to send the sample to a laboratory in Texas that uses an SNP testing method known as Whole Genome Sequencing (WGS). Relying on *Arizona v. Youngblood,* 488 U.S. 51 (1988), he alleges the State destroyed the sample in bad faith.[7]  We disagree.

Under *Youngblood,*[8] if potentially exculpatory evidence is "totally consumed" as a result of testing ordered by the State, due process is violated only if the defendant can "show bad faith by the State in failing to preserve [the] evidence."  *McDonald v. State*, 952 So. 2d 484, 494-95 (Fla. 2006) (citing *King v. State*, 808 So. 2d 1237, 1242-43 (Fla. 2002)).  As we have explained, a finding of bad faith requires that the State intentionally destroy evidence it believes would exonerate the defendant.  *See Guzman v. State*, 868

---

7.  Duckett also cites *California v. Trombetta*, 467 U.S. 479 (1984), but that case does not apply here because the exculpatory value of the sample was not "apparent."  *Id.* at 489.

8.  *Youngblood* involved the alleged destruction of evidence by the State during testing performed before trial.  *See* 488 U.S. at 54. The U.S. Supreme Court has not addressed this issue in the postconviction process, but for purposes of this opinion we assume its reasoning applies.

So. 2d 498, 509 (Fla. 2003) (citing *Youngblood*, 488 U.S. at 57).

Duckett has failed to show bad faith. First of all, the State agreed to test the sample using a newer DNA technology that only a private laboratory could perform. Moreover, given that the sample was small and deteriorated, the parties knew the sample would be consumed in the process and that an inconclusive result was possible—perhaps probable. The total consumption of the sample without conclusive results was an unfortunate byproduct of the testing that Duckett himself requested.

Furthermore, the State gave reasonable grounds for its objection to the Texas laboratory testing. For one, the State wanted to keep the sample in Florida. Additionally, the State believed WGS would unreasonably delay Duckett's execution and that the laboratory it chose could provide adequate testing. The State's actions under these circumstances do not amount to bad faith. Consequently, Duckett cannot prevail on his *Youngblood* claim.

For the reasons given above, we affirm the summary denial of Duckett's rule 3.853 motion and sixth successive rule 3.851

motion. Having rejected Duckett's claims on appeal, we decline to stay his execution. No motion for rehearing will be considered.

COURIEL, C.J., and MUÑIZ, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs with an opinion.
TANENBAUM, J., concurs in part and dissents in part with an opinion.

LABARGA, J., concurring.

While I concur with the majority's decision to affirm the summary denial of relief, I strongly disagree with the dissent's characterization of Duckett's postconviction motion as frivolous and, even more so, with the suggestion that Duckett's counsel should be ordered to show cause why sanctions should not be levied against them.

In these most serious of cases, where death warrants have been signed and execution dates are imminent, counsel on both sides have a solemn obligation to the process. They are guided by their professional and ethical responsibilities, with the understanding that even those condemned to death and facing execution are entitled to access to our courts.

TANENBAUM, J., concurring in part and dissenting in part.

As the majority notes in the margin, *Youngblood* stems from pre- or in-trial due process concerns, similar to those addressed in *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97 (1976); and *California v. Trombetta*, 467 U.S. 479 (1984). The defendant does not have the same rights to due process regarding post-conviction DNA testing under section 925.11, Florida Statutes, certainly not after all that has transpired in this case. After all, what would be the relief if the defendant *had* demonstrated that the State destroyed samples in bad faith— decades after he was put on death row? Vacate his murder conviction and let him walk? Commute his sentence? Even presuming its application here for the sake of argument is a perilous analytical road to go down.

The defendant's latest, and presumably last, post-conviction motion under Florida Rule of Criminal Procedure 3.851 was both time-barred and frivolous, undoubtedly filed only for the purpose of unreasonably delaying his execution further. We should affirm the

summary denial in case number SC2026-1083 on that basis alone but also order his counsel to show cause why there should not be sanctions imposed.

As to the matter under case number SC2026-1084 (an appeal from the denial of yet another motion for DNA testing under Florida Rule of Criminal Procedure 3.853), we simply should dismiss for lack of jurisdiction. *See Duckett v. State*, 431 So. 3d 990, 997–1004 (Fla. 2026) (Tanenbaum, J., dissenting).

A True Copy
Test:

SC2026-1083 7/24/2026
SC2026-1084 7/24/2026

John A. Tomasino
Clerk, Supreme Court



SC2026-1083 7/24/2026
SC2026-1084 7/24/2026

SO
Served:
STEPHEN D. AKE
CAPAPPEALS TLH ATTORNEY GENERAL
SCOTT ANDREW BROWNE
LAKE CLERK
COURTNEY MARIE HAMMER
BRITTNEY LACY

HON. DANIEL B. MERRITT, JR.
CHARMAINE MILLSAPS
MARILYN FRANCES MUIR
NAOMI NICHOLS
NICOLE ROCHELLE SMITH
MARY WELLS